GENERAL ELECTRIC COMPANY,
Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 75–1–00274.

United States Court of International
Trade.

Aug. 26, 1981.

Freeman, Meade, Wasserman & Schneider, New York City (Bernard J. Babb and Louis Schneider, New York City, at the trial; Bernard J. Babb, New York City, on the brief) for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, New York City (Saul Davis, New York City, at the trial and on the brief), for defendant.

NEWMAN, Judge:

The Court is again called upon to determine the question of what constitutes a "radio receiver" for tariff classification purposes. In this action, plaintiff contests the classification of three articles invoiced as "electronic packs" EP–14, EP–20, and PK–11A, and a fourth article invoiced as an "amplifier pack" TINIB, all of which merchandise was imported from Shannon, Ireland and entered at the port of Chicago, Illinois on May 8, 1973 (Entry No. 148889).

The "electronic packs" (chassis) were assessed with duty under the provision in item 685.23, TSUS, modified by T.D. 68–9, for "Solid-state (tubeless) radio receivers" at the rate of 10.4 percentum ad valorem.[1]

Plaintiff claims: that the chassis are merely parts of radio receivers, and therefore are properly dutiable under item 685.-25, TSUS, modified by T.D. 68–9, as "Other" (than solid-state (tubeless) radio receivers), at the rate of 6 percentum ad valorem; alternatively, that the PK–11A is dutiable under the residual provision "Other" in item 685.50, TSUS, modified by T.D. 68–9, at the rate of 7.5 percentum ad valorem; and further that the EP–14 and EP–20 articles should have been assessed under item 688.40, TSUS, modified by T.D. 68–9, as "Electrical articles, and electrical parts of articles, not specially provided for," at the rate of 5 percentum ad valorem, or under item 678.50, TSUS, modified by T.D. 68–9, as "Machines not specially provided for, and parts thereof," at the rate of 5 percentum ad valorem.

The "amplifying packs" were assessed with duty at the rate of 7.5 percentum ad valorem under the provision in item 684.70, TSUS, modified by T.D. 68–9, for "audio-frequency electric amplifiers". Plaintiff argues that the "amplifier packs" are properly dutiable under item 685.32, TSUS, modified by T.D. 68–9, as parts of phonographs at the rate of 5.5 percentum ad valorem.

Defendant concedes that if the chassis are not unfinished radio receivers, they are parts of radio receivers and are properly classifiable under plaintiff's primary claim, viz., item 685.25, TSUS.

1. These imports were classified under item 685.23, TSUS, pursuant to General Interpretative Rule 10(h), TSUS, which reads: "(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, *and whether finished or not finished*". (Emphasis added.)

2. After importation, the EP–14 is incorporated into Model SC–3200, which is an FM/AM/FM multiplex unit with an eight track cartridge tape player and a three speed automatic record changer. The EP–20 is incorporated into Mod-

## I.

At the trial, two witnesses testified for plaintiff and one witness was called by defendant. Additionally, plaintiff submitted twelve exhibits and defendant introduced six exhibits.

The pertinent facts may be briefly summarized:

The chassis in their imported condition are not ready or capable of use by the ultimate consumer as radio receivers without further fabrication, and after importation they are combined with other components to produce various stereo component systems and phonographs. Thus, after importation, the EP–14 and EP–20 units are installed in FM/AM/FM multiplex systems containing a tape player and record changer; the PK–11A is incorporated into either a FM/AM/FM multiplex, phonograph combination or a multiplex unit with a record changer. After importation, the TINIB is installed in plaintiff's phonographs.[2]

The EP–14 and EP–20 chassis are completed by the addition of a power transformer, a "jack pack", a power cord, certain internal wiring, a cabinet (or escutcheon), knobs and a calibration scale. Also contained in the consumer product is an 8-track tape player, a record changer, and speakers.

A power transformer serves to reduce normal household current (120 volts) to current that can be utilized by the consumer product, viz., 18 volts or 6 volts. The jack pack allows the electrical connection of the 8-track tape player, record changer and speakers to the amplifier of a chassis. A power cord conducts electricity from a wall socket to the stereo system and also contains an FM antenna. Addition of the in-

els SC–3205 and SC–7300, both of which are FM/AM/FM multiplex units with eight-track cartridge tape players and three speed automatic record changers. The PK–11A is incorporated into either Model SC–1100, which is an FM/AM/FM multiplex, phonograph combination, or Model SC–2000, which is an FM/AM/FM multiplex system with a three-speed record changer. After importation, the TINIB is incorporated into Models V–638 and V–639, which are three-speed record changers.

ternal wiring serves to make connections from the 8-track tape player, the jack pack, the power cord, and the record player to the imported chassis. The function of the escutcheon, knobs, and calibration scale relative to radio reception allows the user to select a particular radio and radio band. The speaker provides audible tones.

To the PK–11A is assembled a power transformer, a power cord, the escutcheon, knobs and a cabinet. A record changer and cartridge are also combined with these articles to arrive at the completed consumer product, to which speakers are then added.

The only additions to the TINIB are a transformer (which is, in essence, an extra winding of the wire of the motor of the record player in which the TINIB is placed), the power cord (which is the plug of the record player), knobs and a speaker (which are essentially the knobs and speaker for the record player).

## II.

At the outset, we consider the correctness of the Government's classification of the chassis as unfinished radio receivers under item 685.23, TSUS, and General Interpretative Rule 10(h).

Plaintiff maintains that the chassis are not unfinished radio receivers because they are incorporated into stereo systems comprising a combination of a radio, phonograph and tape player, or a combination of a radio and phonograph, and because the chassis were missing significant and substantial parts when imported without which the imports were inoperable as radio receivers: a power transformer, a power cord and loudspeakers. Defendant, however, insists that the missing components do not preclude classification of the chassis as unfinished radio receivers since in their imported condition the chassis were capable of performing the basic functions of a "radio receiver" within the common meaning of that term. Thus, central to the dispute between the parties is a determination of the common meaning of the term "radio receiver".

**3.** This definition is essentially the same as those contained in the *McGraw-Hill Dictionary of Scientific and Technical Terms* (1974) and in

The lexicographic and technical authorities cited by defendant disclose the following pertinent definitions:

1. *Cooke & Markus, Electronics & Nucleonics Dictionary* (McGraw-Hill, 1960), at 380, 387:

| | |
|---|---|
| *Radio Receiver*: | A receiver that converts radio waves into intelligible sounds or other perceptible signals. |
| *Receiver*: | The complete equipment required for receiving modulated radio waves and converting them into original intelligence, such as into sounds or pictures, or converting to desired useful information as in a radar receiver.[3] |

2. *McGraw Hill Encyclopedia of Science and Technology* (Rev. 1966 ed), at p. 256:

| | |
|---|---|
| *Radio Receiver*: | The part of a radio communication system which abstracts the desired information from the radio frequency (rf) energy collected by the antenna. All radio receivers must perform three basic functions: selectivity, amplification, and detection. |

Moreover, the *Encyclopaedia Britannica* (1970 ed.), Vol. 11, pp. 485–486, *Collier's Encyclopedia* (1978), Vol. 19, at pp. 610–611, and *Encyclopedia Americana* (1973), Vol. 23, at pp. 121gg–121hh, describe the basic components and functions of radio receivers in detail, but do not mention transformers, power cords, speakers, and cabinets, as among the basic components of radio receivers.

It bears early emphasis that the imported chassis can perform the basic functions of a radio receiver, to-wit, selection, amplification and detection of radio frequency if they are supplied with electric current by the power transformer and the power cord; and there is no dispute that the chassis are dedicated for use as the radio receiver portion of the specified combination stereo systems. The power transformer and power cord, which were not included in the imported chassis and were added to the chassis

the *IEE Standard Dictionary of Electrical and Electronics Terms* (1972).

after importation, relate merely to the electrical power required to operate the chassis (also the entire stereo system whose phonograph and tape player components were assembled in the United States to the radio), and do not relate to radio reception *per se*. Hence, while the power transformers and power cords were added to the chassis after importation, they are not basic components of the radio receiver portion of the final consumer products.

Although this Court has determined that AM/FM tuners imported with power transformers were properly classified as unfinished radio receivers under item 685.23, TSUS (*Symphonic Electronics Corp. v. United States*, 72 Cust.Ct. 211, C.D. 4543 (1974)) (*Symphonic I*), clearly it cannot be inferred from such determination that the lack of a power transformer would preclude classification of the tuners alone as radio receivers. On the contrary, citing the *Encyclopaedia Britannica*, 1970 ed., Vol. 11, pp. 485–86, this Court held in *Symphonic I* that tuner-amplifiers fall within the common meaning of the term "radio receiver".[4] Consequently, in *Symphonic I* this Court made no determination that a power transformer is a basic component of a "radio receiver" within the common meaning of that term.

In *Symphonic Electronics Corp. v. United States*, 77 Cust.Ct. 147, C.R.D. 76–5 (1976) (*Symphonic II*), the issue was whether a certain AM/FM/MPX stereo chassis was properly dutiable under item 685.23, TSUS. The imports in *Symphonic II* were the same in all material respects as the tuner-amplifiers that were before the Court in *Symphonic I*, wherein this Court sustained the Government's classification under item 685.-23, TSUS. Thus, in both *Symphonic* cases, the imports comprised tuner-amplifiers possessing the basic components and circuitry necessary for the reception of AM, FM and FM stereo multiplex signals, and also possessed sufficient amplifying capability to operate loudspeakers. The imports in both *Symphonic* cases had no cabinet, loudspeaker, control knobs or calibrated station dial, and were designed and intended solely for incorporation into combination radio-phonographs.

In *Symphonic II*, we noted the decision of our Appellate Court in *Montgomery Ward & Co. Inc. v. United States*, 61 CCPA 101, C.A.D. 1131, 499 F.2d 1283 (1974), which held that a cabinet and loudspeaker are basic parts of an electronic organ and therefore the Government's classification of the imported components (which lacked a cabinet and loudspeaker) as an electronic musical instrument under item 725.47, TSUS, was erroneous. Respecting *Montgomery Ward* this Court observed (77 Cust.Ct. 149):

In essence, plaintiff's position is that my prior decision in *Symphonic* requires a reexamination in light of the subsequent holding of the appellate court in *Montgomery Ward* that a speaker and cabinet are essential components of an electronic organ.

Defendant argues that *Montgomery Ward* is distinguishable from the facts disclosed by the incorporated record, and that the prior *Symphonic* case is *stare decisis* inasmuch as there has been no clear and convincing showing of error.

While a cabinet and loudspeaker are essential components of an *electronic organ (Montgomery Ward)*, the issue in the instant case is whether such components are essential to a *radio receiver* within the common meaning of that term. [Emphasis in original decision.]

---

4. The *Encyclopaedia Britannica*, 1970 ed., Vol. 11, pp. 485–86, cited in *Symphonic I*, states: "A 'tuner' is employed for reception of radio broadcasts. The hi-fi tuner is simply a refined version of a radio receiver, but without audio amplifier or loudspeaker * * * [W]hen a radio tuner is combined with an integrated amplifier, the resulting unit is referred to as a 'receiver'." It may also be noted that in *Symphonic I*, both plaintiff's and defendant's witnesses testified that the basic components of a "radio receiver" are a tuner and amplifier, and agreed that "radio receivers" do not necessarily include loudspeakers. Interestingly, the first radio receiver, demonstrated by Heinrich Hertz in Germany in 1887, consisted simply of an open wire loop with spheres attached to the ends to form a gap. The presence of radio waves was "detected" by observing a spark set up on the sphere gap. See *Encyclopaedia Britannica*, 1970 ed., Vol. 18, p. 1090.

In *Symphonic II*, the parties' cross-motions for summary judgment were denied because there was a factual dispute concerning the essential elements of a radio receiver, as that term is commonly understood in the electronics industry; and a dispute concerning whether a stereo "chassis" or tuner-amplifier was commonly regarded and sold in the trade as a "radio receiver". Nevertheless, as respecting loudspeakers, this Court commented (77 Cust.Ct. 153):

> It is apparent from the foregoing quoted excerpts from the stenographic transcript that concerning the essential elements of a "radio receiver" as it is known in the trade, Freeland's testimony sharply conflicts with that of Mergner and Kulinyi, except possibly with respect to loudspeakers, which all three witnesses seem to agree are not essential components of a receiver *per se.* Radio receivers are of such widespread and well known use that the court may take judicial notice of the fact that they are sold both with and without loudspeakers, and that frequently speaker systems are used with receivers that are not only external to the cabinet housing the receiver, but frequently are located at remote locations from the receiver itself.

▄▄ Here, plaintiff's contention that the absence of loudspeakers precludes classification of the chassis as radio receivers is without merit. The common meaning of the term "radio receiver", unlike the meaning of the term "electronic organ", does not require a loudspeaker as an integral component. Indeed, it is common knowledge that radio receivers and loudspeakers for stereo systems are advertised and sold as separate components in the consumer electronics trade.

In *Symphonic I*, the tuner-amplifiers in issue were held properly classified under item 685.23, TSUS, although imported without loudspeakers. Similarly here, I conclude that the absence of loudspeakers was not fatal to the Government's classification of the chassis under item 685.23, TSUS.

While the essentiality of the power transformer and power cord to the operation of the chassis as radio receivers cannot be denied, the lack of these components does not preclude the application of General Interpretative Rule 10(h) to item 685.23, since the chassis are substantially complete radio receivers. Whether merchandise is substantially complete "does not depend merely on the presence or absence of an essential part". *Daisy-Heddon, Div. of Victor Comptometer Corp. v. United States,* 66 CCPA 97, 102, C.A.D. 1228, 600 F.2d 799 (1979). The several definitions of "radio receiver" cited by defendant disclose that the basic functions of a radio receiver are selectivity, amplification and detection, all of which are performed by the chassis in their condition as imported. The power transformers and power cords have no direct relationship to those basic functions and therefore no relationship to radio reception *per se.* Thus, it is obvious that the chassis are substantially complete radio receivers.[5]

Finally, in *Daisy-Heddon* the Court of Customs and Patent Appeals ruled out the functional essentiality test in connection with General Interpretative Rule 10(h) and stated that there are five basic factors that "may" or "can" be relevant in determining whether imported merchandise missing one or more parts is substantially complete.[6] An examination of the record in this case

---

**5.** If plaintiff's position in this case were carried to its logical conclusion, then any sophisticated electric appliance that is imported without its power cord (or merely its plug) would have to be classified as a "part" rather than an unfinished article since the appliance could not be used for its intended purpose. This proposition is clearly untenable, as recognized by our Appellate Court in *Daisy-Heddon,* 66 CCPA at 102.

**6.** These factors are: "(1) Comparison of the number of omitted parts with the number of included parts; (2) comparison of the time and effort required to place it in its imported condition; (3) comparison of the cost of the included parts with that of the omitted parts; (4) the significance of the omitted parts to the overall functioning of the completed article; and, (5) trade customs, i. e., does the trade recognize the importation as an unfinished article or as merely a part of that article" (66 CCPA at 102). The Court further stated that not all of these

(including plaintiff's cost analysis, exhibit 12) in light of the guidelines enumerated in *Daisy-Heddon* supports the Government's contention that the imported chassis are unfinished (substantially complete) radio receivers classifiable under item 685.23, TSUS.

### III.

■ We turn to the classification of the TINIB "amplifying packs" by Customs as audio frequency electric amplifiers under item 684.70, TSUS.

Plaintiff argues that the amplifying packs are not properly classifiable as audio frequency electric amplifiers under item 684.70 since they are incorporated into phonographs, and in their imported condition do not function until the remaining portions of the phonograph (the power transformer, the power cord and record player) are attached to it.

The *Encyclopaedia Britannica* (1969 ed.), Vol. 1, pp. 830–831, states that amplifiers are utilized to "take a small signal (voltage,

current or power) and produce a much larger output signal". Plainly, there is no evidence in the record which rebuts the presumption that the TINIB performs such basic function.

· The obvious flaw in plaintiff's argument is that it ignores the fact that amplifiers, like the other components of the combination articles, cannot perform their intended function unless and until they are attached to the components with which they are utilized.

In short, plaintiff has failed to meet its burden of establishing that the assigned classifications for the imported chassis and amplifying packs are erroneous.

The action is dismissed; and judgment will be entered accordingly.

---

factors require examination in order to determine whether the imported merchandise is substantially complete, or there may be other factors necessary for the resolution of a particular case.