**SWIFT INSTRUMENTS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 74–11–03087.**

United States Court of
International Trade.

Aug. 23, 1982.

George R. Tuttle, P.C., San Francisco, Cal. (Stephan S. Spraitzar, San Francisco, Cal., at the trial and on the brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Jerry P. Wiskin, New York City, at the trial and on the brief), for defendant.

WATSON, Judge:

This action, tried before Judge Scovel Richardson, challenges the denial of a protest against the classification of certain merchandise as "unfinished compound optical microscopes" under TSUS items 708.71, 708.72 and 708.73 (TSUS items 708.71–73).[1] The merchandise can be roughly described as having the appearance of microscopes without lenses. In classifying the merchandise, defendant utilized General Interpretative Rule 10(h) of the General Headnotes to the Tariff Schedules, which provides that unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished. Plaintiff contends that the imported merchandise is properly classified under TSUS item 708.80 providing for "frames and mountings, and parts" of compound optical microscopes.[2]

In support of this proposition, plaintiff relies on the case of *Olympus Corporation of America v. United States,* 72 Cust.Ct. 177, C:D. 4538 (1974), which held that rule 10(h) was inapplicable to similar microscope components and that they were properly classified under TSUS item 708.80. Alternatively, plaintiff contends that even if TSUS items 708.71–73 do provide for unfinished microscopes, the imported microscope components are not unfinished under the

---

1. The language of TSUS items 708.71–73 is as follows:

Compound optical microscopes, electron, proton, and similar microscopes and diffraction apparatus; all the foregoing whether or not provided with means for photographing or projecting the image; frames and mountings for the foregoing articles, and parts of such frames and mounting;

   Compound optical microscopes:
     Not provided with means for photographing or projecting the image:

| | | |
|---|---|---|
| Item 708.71: | Valued not over $25 each | .....22% ad val. |
| Item 708.72: | Valued over $25 but not over $50 each | .....25% ad val. |
| Item 708.73: | Valued over $50 each | .....31% ad val. |

2. TSUS item 708.80 provides for:

Frames and mountings, and parts thereof:
   For compound optical microscopes .....21% ad val.

criteria for determining whether merchandise is unfinished as set forth in *Daisy Heddon, Div. Victor Comptometer Corp. v. United States,* 66 CCPA 97, C.A.D. 1228, 600 F.2d 799 (1979).

Insofar as plaintiff's argument presumes that TSUS items 708.71–73 do not provide for unfinished microscopes, it is unsupported by the legislative history of these provisions and case law.

Paragraph 228(b)[3] of the Tariff Act of 1930, the predecessor to TSUS items 708.-71–73, explicitly provided for unfinished microscopes. Although TSUS items 708.71–73 of the Tariff Classification Study, Proposed Revised TSUS, p. 544 (1960) enlarged and more comprehensively defined the types of optical instruments which could be classified as microscopes, the tariff treatment of what was classified as microscopes remained the same. Duty continued to be assessed at the rate of 45 percent ad valorem, and TSUS items 708.71–73 continued to provide for unfinished compound optical microscopes.

■ The latter conclusion follows naturally from the legislative scheme intended by Congress when it adopted the General Interpretative Rules and in particular rule 10(h), as part of the General Headnotes to the Tariff Schedules. Rule 10(h) has general applicability to the Tariff Schedules. It assures that tariff provisions of the Tariff Act of 1930 providing for unfinished articles, and those that do not, which were in some form incorporated in the Tariff Schedules would be construed to encompass the unfinished article, unless the context required otherwise. *J. Gerber & Co. v. United States,* 62 Cust.Ct. 368, 370, C.D. 3773, 298 F.Supp. 516, 518 (1971), *aff'd,* 58 CCPA 110, C.A.D. 1013, 436 F.2d 1390 (1971). When the historical antecedent of a tariff provision encompasses the unfinished article, and there is no manifestation of intent

in the schedule, paragraph or subparagraph headnotes to the current tariff provision not to provide for the unfinished article, it is logical to conclude that rule 10(h) does apply to the provision.

Furthermore, *Olympus Corporation of America v. United States,* does not stand for the general proposition that rule 10(h) does not apply to TSUS items 708.71–73. In that case the Court was faced with an importation of microscope parts identical to those in issue here, except that the importation did not include specimen stages. Under the then prevailing rule of decision, the Court reasoned that "an imported article, *lacking the vital components* that characterize or comprise a compound optical microscope, is not classifiable as a compound optical microscope unfinished, in competition with a tariff provision classifying the individual entities of which the assembled article is comprised." *Olympus* at 178, n. 5 [emphasis added]. This rule of decision is no longer valid in light of the Court of Customs and Patent Appeals decision in *Daisy Heddon.*

There it was argued that the rule stated in *Authentic Furniture Products, Inc. v. United States,* 68 Cust.Ct. 204, C.D. 4362, 343 F.Supp. 1372 (1972) *aff'd.* 61 CCPA 5, C.A.D. 1109, 486 F.2d 1062 (1973) that the "... absence of a substantial or essential part precludes classification as the unfinished article itself," required reversal of the lower court decision. The lower court's decision was affirmed. The "essential part" rule was explicitly overruled, and the proper basis for determining whether merchandise is to be classified under competing Tariff Schedule provisions as an unfinished article or as parts of the article was made clear.

If, as appellant argues, the omission of a part essential to the use of the eo nomine designated article would prevent classification as the article in an unfin-

---

**3.** Paragraph 228(b) of the Tariff Act of 1930 reads:

Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, *microscopes,* all optical instruments, frames and mountings thereof, and parts of any of the foregoing; *all the foregoing finished or unfinished,* not specially provided for, ........ 45% *ad val.* [Emphasis added].

ished condition, there would be, in practical effect, no such thing as an unfinished article, since the omission of virtually any part from an otherwise complete article would prevent its use in the manner intended. See *Authentic Furniture Products,* 61 CCPA at 8, 486 F.2d at 1064–65 (Miller, J., dissenting). Such is clearly not the intent of Congress, as evidenced by the very existence of General Interpretative Rule 10(h).

Further, the result in *Authentic Furniture* Products does not merely depend on the "essential" nature, be it functional or commercial, of the omitted side rails. It is abundantly clear from the opinion of the Customs Court, which was approved by this court, that the basis of the decision in that case was that *"it is the determination of the court that the importations do not constitute a substantially complete article."* 68 Cust.Ct. at 215, 343 F.Supp. at 1380. Such a determination does not depend merely on the presence or absence of an "essential" part. *Daisy Heddon* at 802 [emphasis added].

Since rule 10(h) is applicable to TSUS items 708.71–73 and they do provide for unfinished microscopes, it is incumbent upon the Court to determine whether the imported components are substantially complete.

■ That determination is properly made by considering the circumstances surrounding each particular importation to determine the significance of what has been omitted, and the efforts necessary to place the completed article into the flow of commerce. *Daisy Heddon* suggests five factors that may be relevant to such a determination. They are: (1) a numerical comparison of the omitted parts and the included parts, (2) a comparison of the time and effort necessary to complete the article, and the

time necessary to put the imported parts in the condition in which they were imported, (3) a comparison of the cost of the omitted parts to that of the completed article, (4) the significance of the omitted parts to the overall functioning of the article, and (5) whether the trade recognizes the imported merchandise as an unfinished article, or as part of the article.

■ Using these criteria, the Court finds the imported components to be substantially complete versions of the four microscope models at issue.

Defendant concedes that the components of two of the six imported model microscopes[4] should be classified under TSUS item 708.80 of the Tariff Schedules. The imported components common to the four models that remain in issue, are a base providing support and a source of illumination; a specimen stage for mounting the object to be examined; the arm of the microscope with coarse and fine focus adjustment knobs; the body of the microscope containing the eyepiece lens mount(s); and the nosepiece onto which the objective lenses are mounted.

Plaintiff separately imported eyepiece and objective lenses and assembled them with these components to form complete microscopes. After plaintiff assembled the microscopes, they were calibrated and shipped. They were calibrated in two ways. First, they were "parfocalled" so that the viewed object would remain in focus regardless of which objective was used. Second, they were "parcentered" so that the entire area within the microscope user's field of vision was in focus.[5]

Plaintiff argues that since the imported components cannot be transformed into functioning microscopes without a number of expensive lenses, this proves that these

---

4. The components of six different model microscopes were included in the importation. They are: (1) M8802B, (2) HBA, (3) 2241 (With mirror fork), (4) 2241B, (5) 458B (04, CIVT), and (6) CR–CB–06–P5–5CB–OD–C4VR. The components of the first two models, are what defendant concedes are properly classified under TSUS item 708.80.

5. These calibrations are only the ones made at plaintiff's plant before the microscopes were shipped out. R. 101–102. Another witness, who sold plaintiff's microscopes made additional calibrations, but these are not discussed because of the witness's acknowledgment that he was far more particular about the condition in which he sold microscopes.

components are not substantially complete. The Court does not agree. Where all parts are imported in different shipments and then assembled into complete articles without need for further manufacturing, emphasis should be placed on a comparison of efforts necessary to place the microscopes in their final condition, as opposed to those needed to place the imported components in the condition in which they were imported.

Plaintiff's plant superintendent testified that both sets of parts were assembled, calibrated and packed for shipping in ten minutes to an hour. Another witness who sold plaintiff's microscopes, spent up to two hours calibrating them. Even if the higher figure provided the basis of comparison, it is obvious that neither the time involved nor the equipment used in calibrating the microscopes, compares to the labor and machinery needed to manufacture precise and complicated articles such as the ones imported here.

Moreover, packing lists provided by plaintiff's parent company accompanying the imported components, denominated them as "incomplete microscopes." When asked about this, plaintiff's plant superintendent testified that the invoice was erroneous, but only insofar as it described components of a microscope model other than the one listed. It should also be noted that a dealer of plaintiff's microscopes stated that if he were to sell the imported components of a certain model microscope, as imported, he would sell them as that model "less optics," rather than as parts.

In the face of such overwhelming evidence that plaintiff and the witness who sold plaintiff's microscopes, regarded the imported components to be more like microscopes than microscope parts, little weight can be attached to the fact that the omitted lenses represented a high proportion of the total cost of the microscopes. Only the intrinsically high cost of optic glass and processing it, is responsible for this. As nothing needed to be done to the lenses before they were assembled with the imported components, it is inappropriate for the high price of optic glass to play a sub-

stantial role in the determination of whether the imported merchandise is substantially complete.

Likewise, the fact that the omitted parts constituted a high proportion of the total number of parts in the completed microscope, does not have much significance in the particular circumstances of this case. The lenses could be assembled with the imported components with a minimum of time and difficulty. Also, the number of imported parts has been underestimated. For example, the base of each microscope is described as one part, even though the models with electrical means of illumination, contain a switch, an electrical cord, a coverplate for the light source, and whatever electrical components are needed to make the light work. The same holds true for the arm of the microscope which does not list the coarse and fine focus adjustment knobs; the specimen stage which does not list the slide clamps; and the nosepiece, which does not list the revolving plate with threaded objective mounts.

Consideration of these factors leads the Court to conclude that omission of lenses essential to the functioning of the completed microscopes, under the rationale of *Daisy Heddon*, does not preclude a determination that the imported components were substantially complete.

In light of what has been discussed above, plaintiff has not proven that the merchandise at issue was classified incorrectly, or that it is more properly classified under the claimed tariff provision. Therefore, the classification of the imported microscope components as unfinished compound optical microscopes, under TSUS items 708.71–73 and rule 10(h) is affirmed.

Judgment shall enter accordingly.