**CHANNEL MASTER, DIV. OF AVNET INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 80–5–00802.**

United States Court of International Trade.

Oct. 29, 1986.

---

Fitch, King & Caffentzis (Richard C. King), New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Intern. Trade Field Office (Saul Davis), New York City, for defendant.

## MEMORANDUM OPINION
## AND ORDER

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan, and described on the customs invoice as "scanners," which were imported during the years 1974, 1975, 1976, and 1977.

The merchandise was classified by the Customs Service as "other solid-state (tubeless) radio receivers," under items 685.23 or 685.24 of the Tariff Schedules of the United States (TSUS), depending upon the date of importation. Consequently, the merchandise was assessed with duty at a rate of 10.4 per centum ad valorem.

Plaintiff protests this classification and contends that the merchandise is properly classifiable as other radio broadcasting reception apparatus, under item 685.25, TSUS, at a rate of 6 per centum ad valorem.

The pertinent statutory provisions of the tariff schedules are as follows:

Classified under:

Schedule 6, Part 5:

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, . . .: all of the foregoing, and any combination thereof, whether or not incorporating clocks of other timing apparatus, and parts thereof:

. . . .

Radiotelegraphic and radiotelephonic transmission and reception apparatus: radiobroadcasting and television transmission and reception apparatus, and parts thereof:

Other:

685.23    Solid-state (tubeless) radio receivers ................... 10.4% ad val.

[685.24   Other ........................................... 10.4% ad val.]

Claimed under:

685.25   Other ............................................... 6% ad val.

---

The question presented is whether the imported merchandise is dutiable as "other solid-state (tubeless) radio receivers," as classified by Customs, or as other radio broadcasting reception apparatus, as claimed by plaintiffs. In order to decide this issue, the Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 2 Fed Cir. 70, 75, 733 F.2d 873, 878 (1984).

■ After an examination of the merchandise, the pleadings and supporting papers, and relevant case law, it is the determination of the Court that plaintiff has not overcome the presumption of correctness that attaches to the government's classification, and the action is dismissed. 28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co. v. United States*, 2 Fed.Cir. at 72, 733 F.2d at 876; *E.R. Hawthorne & Co. v. United States*, 1 Fed.Cir. 42, 52, 730 F.2d 1490, 1490 (1984).

Three different types of scanners were imported, each designed to receive assigned frequencies for various radio services, such as police, fire, and other municipal broadcasts. Because the frequencies for these services vary in each town or city, different crystals allow the user to tune into the desired frequencies of the particular area.

The two smaller scanners, Models CS6258 and CS6790, are completely solid-state, VHF–FM dual conversion portable receivers, and are capable of automatically switching four crystal-controlled channels. These models can be powered either by four "penlight" batteries, or through the use of the external powersocket, which allows the units to be operated from any convenient AC outlet with the use of an optional AC-adaptor. The larger scanner, Model CS6794, is a solid-state, dual conversion FM receiver designed to monitor public service broadcasts. This receiver features 10 channels which can be selected manually or automatically. Model CS6794 can be powered by either an AC outlet or a car battery.

All three scanners require one crystal for each frequency that the user wishes to operate. The crystals may be purchased from a retail dealer, or from the crystal manufacturer, and may be inserted by the owner of the unit. The amount of time and effort necessary to complete the imported scanners into fully operable receivers is governed by the amount of time required by the user to remove the rear compartments, and to insert the crystals into the correct position.

In challenging the Customs Service's classification of the scanners, it is plaintiff's contention that the units do not fall within the common meaning of the *eo nomine* term "radio receiver," and that Rule 10(h) does not apply in this case.

The defendant contends that the "Customs Service classified these scanners as radio receivers, as they were at least unfinished radio receivers by virtue of Rule 10(h)." Rule 10(h), which has general applicability to the tariff schedules, provides:

unless the context requires otherwise, a tariff description for an article covers

such article, whether assembled or not assembled, and whether finished or not finished.

19 U.S.C. § 1202 General Headnotes and Rules of Interpretation 10(h) (1982).

In order to determine whether the imported scanners are unfinished radio receivers, the court must ascertain the common meaning of "radio receivers," as that term is used by Congress in the tariff schedules. The meaning of a tariff term "is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary." *Bentkamp v. United States*, 40 CCPA 70, 78, C.A.D. 500 (1952), *quoted with approval in Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir.1984).

▇ A radio receiver, as that term is used in the tariff schedules, is an *eo nomine* designation for an article which has been lexicographically and judicially defined as capable of performing three basic functions: selectivity, amplification, and detection. *See NEC America, Inc. v. United States*, 8 CIT 184, 187, 596 F.Supp. 466, 470 (1984), *aff'd*, 760 F.2d 1295 (Fed. Cir.1985); *General Electric Co. v. United States*, 2 CIT 84, 90, 525 F.Supp. 1244, 1248 (1981), *aff'd*, 69 CCPA 166, 681 F.2d 785 (1982). Absent contrary legislative intent, an *eo nomine* designation includes all forms of the article. *B & E Sales Co. v. United States*, 9 CIT ——, Slip Op. 85–22 (1985).

▇ Selectivity is defined as the ability to select a particular frequency from radio signals in the atmosphere. Amplification is the process of increasing the radio frequency energy received by the antenna so that it can be used to generate a signal. Detection is the process by which the radio frequency waves are converted into a signal that can be utilized.

In *General Electric Co. v. United States*, 2 CIT 84, 525 F.Supp. 1244 (1981), *aff'd*, 69 CCPA 166, 681 F.2d 785 (1982), pursuant to item 685.23, TSUS, Customs classified certain imported "electronic packs" as unfinished radio receivers. Plaintiff contended that the electronic packs were merely parts of radio receivers, since they were missing "significant and substantial parts," such as a power transformer, power cord, and loudspeaker. Defendant responded that "the chassis were capable of performing the basic functions of a 'radio receiver' within the common meaning of that term," and that the classification was proper. *Id.* at 87, 525 F.Supp. at 1246. The court determined that "the basic functions of a radio receiver are selection, amplification, and detection." *Id.* The court also determined that the absence of the components did not preclude the application of Rule 10(h). Accordingly, the court held that the merchandise was substantially complete, and was properly classified as unfinished radio receivers. On appeal, the United States Court of Customs and Patent Appeals affirmed, and adopted the opinion of the Court of International Trade. *See* 69 CCPA 166, 167, 681 F.2d 785, 786 (1982).

In *NEC America, Inc. v. United States*, 8 CIT 184, 596 F.Supp. 466 (1984), *aff'd*, 760 F.2d 1295 (Fed.Cir.1985), the Customs Service classified imported battery-operated paging receivers as "other solid-state (tubeless) radio receivers," under item 685.-24, TSUS. Plaintiff protested this classification, and contended that the merchandise was properly classifiable under item 685.70, TSUS, as "indicator panels and other sound or visual signalling apparatus." Defendant maintained that the pagers were properly classified as "radio receivers" because they performed the basic functions of selection, amplification, and detection. The court sustained the classification, and, relying in part on the *General Electric* case, held that since the paging receivers were capable of performing those basic functions, the paging receivers were properly classified under item 685.24, TSUS, as radio receivers.

In the present case, the parties have stipulated that the scanners, as imported, do not "have the ability" to perform selection or detection. The scanners, however, do have all the necessary circuitry to perform these functions, and all that is missing from the units that prevents full opera-

tion as a radio receiver are the frequency crystals. Moreover, each scanner has a ceramic filter which permits "excellent selectivity." The parties also stipulated that, after the crystals are inserted, the scanners can operate to receive radio broadcasts. Plaintiff contends that since the scanners, as imported, cannot perform the three basic functions of a radio receiver, they do not come within the *eo nomine* meaning of a radio receiver. It cannot be denied, however, that once the appropriate crystals are inserted, the scanners can perform these three basic functions of selection, amplification, and detection.

It must be noted at the outset that classification under item 685.24, TSUS, is not restricted to articles that are finished, and that it has been held to encompass articles that are unfinished. *See General Electric Co. v. United States*, 2 CIT 84, 90, 525 F.Supp. 1244, 1248 (1981) (classification of merchandise as unfinished radio receivers), *aff'd*, 69 CCPA 166, 681 F.2d 785 (1982). To ascertain whether an article can be classified as unfinished under Rule 10(h), the court must determine if the merchandise is "substantially complete." *Authentic Furniture Products, Inc. v. United States*, 343 F.Supp. 1372, 68 Cust.Ct. 204, 211 (1972), *aff'd*, 61 CCPA 5, C.A.D. 1109, 486 F.2d 1062 (1973); *see Daisy-Heddon, Div. of Victor Comptometer, Corp. v. United States*, 66 CCPA 97, 600 F.2d 799 (1979).

In the *Authentic Furniture Products* case, the question presented was whether certain unassembled pieces or parts of wooden bunk beds had been properly classified by the Customs Service as parts of furniture, under item 727.40, TSUS. Plaintiff contended that the imported merchandise was properly classifiable as furniture, under item 727.35, TSUS. Since the tariff definition of "furniture" expressly included "beds," plaintiff asserted that, pursuant to Rule 10(h), the unassembled pieces of wooden bunk beds should have been classified as furniture.

Defendant maintained that the imported merchandise was "neither 'beds' nor 'bunk beds' because [it did] not contain a 'bed-

frame and a bottom.'" The importations lacked "siderails," and defendant stated that "without siderails, the imported pieces cannot even be assembled so that they will stand in an upright position." The court held that "since the imported pieces, when assembled, would not constitute a substantially complete bunk bed," they could not be classified as "unfinished furniture," and, therefore, had been properly classified as parts of furniture. The Customs Court reviewed the relevant judicial authority and concluded:

> That parts of an article are classifiable as the article itself only if the article, as imported, is substantially complete, appears to be a reasonable application of General Interpretive Rule 10(h).

68 Cust.Ct. at 215, 343 F.Supp. at 1380. On appeal, the Court of Customs and Patent Appeals affirmed. 61 CCPA 5, C.A.D. 1109, 486 F.2d 1062 (1973).

In affirming the decision of the Customs Court, the Court of Customs and Patent Appeals stated that there was "no error in the lower court's holding that parts of an article may be classified as the unfinished article itself only when the imported pieces constitute a substantially complete article...." 61 CCPA at 6, 486 F.2d at 1063. Hence, it cannot be disputed that the court "approved" of the test set forth by the Customs Court in the *Authentic Furniture Products* case. Although the appellate court, in a separate portion of its opinion, rephrased the test to be whether "the absence of a substantial or essential part precludes classification as the unfinished article itself," there is no question that the test applied by the Customs Court did not include the word "essential." Indeed, in *Daisy-Heddon, Div. Victor Comptometer Corp. v. United States*, 66 CCPA 96, 600 F.2d 799 (1979), the Court of Appeals expressly rejected the language which referred to absence of an "essential" part. *Id.* at 102, 600 F.2d at 802.

In the *Daisy-Heddon* case, the Court of Customs and Patent Appeals stated:

> the result in *Authentic Furniture Products* does not merely depend on the "es-

sential" nature, be it functional or commercial, of the omitted [parts]. It is abundantly clear from the opinion of the Customs Court, which was approved by this court, that the basis of the decision in that case was that "it is the determination of this court that the importations do not constitute a substantially complete article."

66 CCPA at 102, 600 F.2d at 801.

In addition, the appellate court identified five of the more common factors that are relevant in determining whether the imported merchandise is substantially complete:

(1) Comparison of the number of omitted parts with the number of included parts; (2) comparison of the time and effort required to complete the article with the time and effort required to place it in its imported condtion; (3) comparison of the cost of the included parts with that of the ommitted parts; (4) the significance of the omitted parts to the overall functioning of the completed article; and, (5) trade customs, i.e. does the trade recognize the importation as an unfinished article or as merely a part of that article.

*Daisy-Heddon*, 66 CCPA at 102, 600 F.2d at 803. This list, although not intended to be exclusive, offers guidelines that are helpful in resolving the classification question which depends upon whether the article is substantially complete. *Id.*

An example of the application of the *Daisy-Heddon* factors may be found in the case of *Swift Instruments, Inc. v. United States*, 4 CIT 88, 554 F.Supp. 1235 (1982), *aff'd*, 714 F.2d 161 (Fed.Cir.1983). In the *Swift Instruments* case, the question presented was whether certain microscopes, imported without lenses, were properly classified as "unfinished compound optical microscopes," under items 708.71–.73, TSUS. Plaintiff asserted that, under the criteria set forth in the *Daisy-Heddon* case, the merchandise was not substantially complete, and should have been classified as "frames and mounting, and parts" of compound optical microscopes, under item 708.-80, TSUS. Defendant contended that, un-

der Rule 10(h), notwithstanding that the microscopes lacked optical components, the merchandise was, nevertheless, substantially complete and, therefore, was properly classified as the unfinished article. The court found that the imported merchandise was substantially complete, and held that the merchandise was properly classified. In affirming the classification, the court noted that the "essential part" rule had been expressly rejected in *Daisy-Heddon*, and stated that "omission of lenses essential to the functioning of the completed microscopes ... does not preclude a determination that the imported components were substantially complete." *Id.* at 93, 554 F.Supp. 1239. On appeal, the Court of Appeals for Federal Circuit affirmed, without opinion. 714 F.2d 161 (Fed.Cir.1983).

In this case, after consideration of the *Daisy-Heddon* factors, the Court has concluded that the imported scanners are substantially complete radio receivers and, therefore, are properly classifiable as unfinished radio receivers. The stipulated facts disclose that the two four-crystal scanners have over 135 parts, and the four crystals and four batteries total eight additional parts to be added before the scanner is fully operational. The 10–crystal scanner has over 175 parts as imported, and requires 10 crystals to be fully operational. It is clear that the number of parts to be added to each scanner is small in comparison with the large number of parts already included in the imported merchandise. Clearly, this is an important factor that would indicate that the scanners are substantially complete.

The time and effort necessary to convert or complete the imported scanning receivers into operational receivers are insignificant compared to the time and effort required to place the scanners in their condition as imported. Once the scanners are purchased, all that the owner need do is to remove the rear compartment of the scanner, and insert the crystals and batteries into the appropriate positions. Surely, this simple function requires a minimal amount of time and effort, and is all that is re-

quired to make the imported scanner receivers fully operational.

The evidence also shows that the cost of the omitted parts is small in comparison to the cost of the imported article, and supports the defendant's contention that the goods are substantially complete. The cost of the omitted parts constitutes 16 percent of the cost of model CS9258, 14 percent Model CS6790, and 23 percent of model CS6794. Although these percentages are not insignificant, they are sufficiently low to support the conclusion that the scanners, as imported, are substantially complete receivers.

It is undisputed that the crystals are necessary to the use of the scanner as a radio receiver. This, however, does not prevent the scanners from being unfinished receivers pursuant to Rule 10(h) and the *Daisy-Heddon* criteria. Plaintiff urges that the crystals, which allow the scanners to perform as radio receivers, are the "heart" of the radio, and that without them the scanners cannot properly be classified as radio receivers. This contention is unpersuasive, and is not the heart of the classification question presented.

Although the crystals are necessary to permit the scanner to operate, the crystal is merely one of numerous other components, all of which enable the scanners to perform the basic functions of a radio receiver. The scanners as imported contain circuits designed to select particular frequencies, circuits designed to detect radio information, and a speaker which allows for amplification of the signals into perceptible sounds. In addition, as the instruction manuals describe, each scanner contains a "Monolithic crystal filter and ceramic filter for high sensitivity and high selectivity." Just as the crystals may be essential to the scanner, so are the circuits, filters, and speaker.

In determining whether an article is an unfinished article under Rule 10(h), the question is whether the article is "substantially complete," not whether it lacks an "essential" part. Under *Daisy-Heddon*, a factor to be considered is the significance of the omitted parts to the overall functioning of the completed article. This, however, is merely one of the factors to be considered by the court, and does not establish an "essential part" test to determine whether an article is "substantially complete." Any doubt as to the meaning of this factor in the totality of the *Daisy-Heddon* factors is resolved by an understanding of the *Swift Instruments* case. In *Swift Instruments*, even though the lenses, which were essential to the functioning of the microscopes, were omitted, this fact did "not preclude a determination that the imported components were substantially complete." 4 CIT at 93, 554 F.Supp. at 1239. Consequently, in this case, the Court finds that the absence of the crystals does not preclude the imported scanners from being substantially complete, and being classified under item 685.-23 or 685.24, TSUS, as unfinished radio receivers.

In view of the application of Rule 10(h), and the relevant case law, the Court finds that the merchandise is substantially complete, and that the presumption of correctness that attaches to the government's classification has not been overcome. Since the Court holds that the imported scanners have been properly classified as "other solid-state (tubeless) radio receivers," under items 685.23 or 685.24 of the tariff schedules, plaintiff's protest is denied, and the action is dismissed. Judgment will issue accordingly.