**DAISY–HEDDON, DIV. VICTOR COMPTOMETER CORP.**

v.

**UNITED STATES.**

**C.D. 4765; Court No. 75–8–02033.**

United States Customs Court.

Sept. 6, 1978.

Stein, Shostak, Shostak & O'Hara, Inc., Los Angeles, Cal. (John N. Politis, Los Angeles, Cal., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Saul Davis, Washington, D. C., Trial Atty.), for defendant.

RICHARDSON, Judge:

The merchandise in this case was exported from Japan in 1972 and 1973 and is described variously on exporter's invoices as "Heddon closed face reels", "fishing reel parts" and "Heddon fly reels"; and on special customs invoices and consumption entries as "fishing reel parts", "fishing reel * * * housing" and "fishing reels". They were classified in liquidation upon entry at Los Angeles-Long Beach, California, under TSUS item 731.20, as modified by T.D. 68–9, as fishing reels valued not over $2.70 each, at the duty rate of 23 *per centum ad valorem*. It is claimed by the plaintiff-importer that the merchandise is properly classifiable under TSUS item 731.26, as modified by T.D. 68–9, as fishing reel parts, at the duty rate of 13.5 *per centum ad valorem*.

The so-called reel housings imported in this case, as well as parts necessary to complete them after importation, are illustrated in samples introduced into the record before the court. The five containers of samples of models 233, 281, 282, 283 and 284 introduced into evidence and the brochure in the respective containers, describe the contents as "Open Face Spinning Reel" and "Spinning Reel". There is no question in the court's mind, after examining the samples at length, but that the alleged housings are finished articles insofar as the state of manufacture is concerned. What they lack for completion at the time of importation is mere *assembly* with various other parts.

In the case of model 233 reel housing (exhibit 1) the parts necessary to complete the reel consists of: spool, drag knob, side name plate, side name plate screws (3), and grease. The first four items are before the court as samples (exhibit 2). These items can be easily assembled into their proper place on the housing mechanism, to form a complete functioning reel ready for mounting on a fishing rod. It is also clear from examining the other samples of reels that they too can be readily completely assembled.

The model 281 reel housing (exhibit 3) lacked: spool, handle and handle nut, drag knob, spool washer, and handle shaft washer. The model 282 reel housing (exhibit 5) lacked the same parts as the model 281. The model 283 reel housing (exhibit 7) lacked: spool, handle and handle nut, drag knob, and handle arm shaft washer. And the model 284 reel housing (exhibit 9) lacked the same parts as the model 283.

Manipulation of these reel housings discloses that they are actually more than housings *per se*. Each unit as imported is really a combination of subassemblies comprising roughly the main housing with its internal gearing, the rotating flyer assembly and reel shaft, and the bail and bail lock assemblies.

From the testimonial evidence, the court notes the following: Charles F. Barclay, plaintiff's manager of general accounting, and a fisherman for some 43 years who has become acquainted with plaintiff's products during the course of his employment by plaintiff, testified that exhibits 1, 3, 5, 7 and 9 are not sold by plaintiff as fishing reels because they simply are not fishing reels, and that they cannot be used for fishing in the condition as imported because of the missing parts. He was of the opinion that these exhibits are not substantially complete reels, reasoning that out of 60 parts comprising a completed reel, approximately 22 parts were missing.

Dennis Bunker, a manufacturer's representative for many lines of sporting goods, and an owner of a retail fishing tackle business in Burbank, California, testified that he is familiar with plaintiff's fishing reels as a result of selling them wholesale and retail, and has also repaired them. He stated that exhibits 1, 3, 5, 7 and 9 could not be used for fishing because they were not complete, and characterized them as a grouping of parts. He stated, however, that he had never seen them advertised, marketed or sold to the general public or to retailers as parts of reels.

John F. Betz, an owner of a company selling fishing tackle to the general public who has repaired fishing tackle for 25 to 30 years, testified that he has never seen articles similar to exhibits 1, 3, 5, 7 and 9 advertised, marketed or sold as parts or exhibited in any parts or price lists put out by fishing reel companies. He stated that a substantially complete reel is a reel with one or two parts or a spool or handle missing. He was of the opinion that exhibits 1, 3, 5, 7 and 9 are substantially complete, by which he meant an article which has a majority of its parts. He said that people have brought articles to him which would have been complete fishing reels but for the missing spool, handle and drag knob, and referred to them as fishing reels. He stated, however, that he has never sold articles like exhibits 1, 3, 5, 7 and 9 as fishing reels.

Harvey W. Sharrar, employed by Browning Arms Company, a sporting goods distributor, testified that his company sold fishing reels during the period 1972 to 1975, during which time he was a manufacturer's representative covering California. He stated that the term housing refers to an individual cast or ordinary cast part. The individual cast part does not include all the components in exhibits 1, 3, 5, 7 and 9. It includes only the outer portion. The witness said that his company sold every constituent component that goes into a spinning reel, and advertised the availability of these components. He testified that he had not seen or heard of anyone in the trade advertising, marketing, or referring to exhibits 1, 3, 5, 7 and 9 as parts. These exhibits, in his opinion, are reels minus some parts. He considered exhibits 1, 3, 5, 7 and 9 to be unfinished fishing reels, and the addition of the spool, handle, and drag knob to be a simple operation. He stated, however, that he considered the drag knob, spool, and handle to be parts even though they are made up of an assembly of parts.

Plaintiff contends that the imported articles are *parts* of fishing reels, and not *unfinished* fishing reels. Plaintiff argues that the missing reel parts are both essential and substantial.

Defendant contends that plaintiff has failed to prove that the imported merchandise is not within the common meaning of unfinished or substantially complete reels. Defendant argues, ". . . it is clear that since the imported merchandise is not recognized as 'parts' of reels, but constitutes much more than mere 'parts' for fishing reels, it was properly classified as 'unfinished' reels, which were 'substantially complete' reels in the sense enunciated in *Authentic Furniture*." (Defendant's brief, p. 28)

General Interpretative Rule 10(h) of TSUS provides that a tariff description for an article covers such an article whether it is finished or not finished. And General Interpretative Rule 10(ij) of TSUS provides that a provision for parts of an article covers a product solely or chiefly used as a part

of such article. The competition between the unfinished articles and the parts provisions was the subject of decision in *Authentic Furniture Products, Inc. v. United States,* 61 CCPA 5, C.A.D. 1109 (1973), involving an importation of wooden headboards, footboards, posts, ladders, and guardrails for bunk beds. The only missing articles were the siderails. In that case our appellate court affirmed the trial court's finding that the siderails constituted an essential item which precluded classification of the imported merchandise as a substantially complete bunk bed. The court said (p. 7):

> We consider the application of the test, whereby the absence of a substantial or essential part precludes classification as the unfinished article itself, to be well founded in the case law so ably discussed by the lower court and aptly followed in the present case.

Applying the substantial or essential test of *Authentic Furniture* to the evidence in this case, the court finds itself in agreement with the defendant. In the court's opinion, the imported merchandise was properly classified as fishing reels within the purview of item 731.20. It is plain to see that when exhibit 1 was manipulated manually all the action that is characteristically associated with the open face spinning reel had been built into that article.

Thus, the bail could be cocked. And then it closed upon rotation around the turning flyer. The internal gears moved and rotated the crankshaft in circular motion while at the same time causing the spool shaft to perform its customary reciprocal back and forth motion. This, to the court, constitutes the essence of a spinning reel. This action was imparted to the reel without the addition of the omitted parts. The spool, handle, and drag knob can be used to regulate, retard or refine this action. It is noted from the testimony of people dealing with the industry that they referred to such articles as exhibits 1, 3, 5, 7 and 9 as "reels".

Neither is it of any moment that a fisherman would be unable to fish with articles in the condition of exhibits 1, 3, 5, 7 and 9 at the time of importation. Without more, a fisherman would be unable to fish with a complete reel for that matter. The function of a reel of this kind is to *spin.* And the *spinning action* is achieved by the imported articles in the condition as imported.

The court is not unmindful of plaintiff's efforts to compare, among other things, the cost of the omitted parts against the cost of the imported articles with a view toward establishing the substantiality of the omitted parts. However, a cost analysis is not controlling. One always must weigh the relationship of the omitted parts against the included parts comprising the imported article and assess the significance of the omitted parts in the total scheme of things. And cost alone does not measure such significance, as where a relatively simple item may be disproportionately high in cost merely as a result of scarcity of raw material or other difficulty of acquisition.

Taking the evidence as a whole, including the samples which the court regards as potent witnesses, to say that the imported articles are not fishing reels because of the absence of the disputed parts would be to say, as defendant so aptly put it, that an automobile from which a wheel had been removed would no longer be an automobile. The court is unable to take that view on the basis of the evidence in this record.

For the reasons stated, the action must be dismissed. Judgment will be entered herein accordingly.