**DAISY–HEDDON, DIV. VICTOR COMP-TOMETER CORP., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Appeal No. 79–5.**

United States Court of Customs and Patent Appeals.

June 21, 1979.

S. Richard Shostak, Los Angeles, Cal. (Stein, Shostak, Shostak & O'Hara, Inc., Los Angeles, Cal.), attys. of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Joseph I. Liebman, Saul Davis, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and PENN,* Judge.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 81 Cust.Ct. 55, C.D. 4765, 460 F.Supp. 680 (1978), dismissing the importer's action challenging the classification of imported merchandise as fishing reels under item 731.20 of the Tariff Schedules of the United States (TSUS) as modified by T.D. 68–9, rather than as parts of fishing reels under TSUS item 731.26 as modified by T.D. 68–9. We affirm.

Five different articles are involved. They are described variously on exporter's invoices as "Heddon closed face reels," "fishing reel parts" and "Heddon fly reels," and on special customs invoices and consumption entries as "fishing reel parts," "fishing reel * * * housing" and "fishing reels." We shall refer to them by the importer's model number designations associated with the samples in evidence, models 233, 281, 282, 283, and 284.

Each article, as imported, consists of a combination of subassemblies of a particular fishing reel of the spinning reel type roughly comprising the main housing with its internal gearing, the rotating flyer assembly and spool shaft, and the bail and bail lock assembly. Each article lacked certain parts necessary to make a complete reel. Model 233 lacked the spool, drag knob, handle, side plate and three screws; models 281 and 282 lacked the spool, drag knob, handle and handle nut, spool washer, and handle arm shaft washer; models 283 and 284 lacked the spool, drag knob, handle and handle nut, and handle arm shaft washer.

To show the makeup of a typical complete spinning reel we reproduce the exploded drawing of the parts list for model 282, Exhibit 5.

---

* The Honorable John G. Penn, United States District Court for the District of Columbia, sitting by designation.

## Relevant Statutes

Both the Customs Service and the importer urged that the imported merchandise is properly classifiable under Schedule 7 of TSUS, Part 5, subpart B. The relevant portions read:

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NON-ENUMERATED PRODUCTS

\* \* \* \* \* \*

PART 5.—Arms and Ammunition; Fishing Tackle; Wheel Goods; Sporting Goods, Games and Toys

\* \* \* \* \* \*

Subpart B.—<u>Fishing Tackle</u>

\* \* \* \* \* \*

Fishing reels and parts thereof:

Reels:

| | | |
|---|---|---|
| Item 731.20 | Valued not over $2.70 each . . . . . . . . . . . . . . | 23% ad val. |

\* \* \* \* \* \*

| | | |
|---|---|---|
| Item 731.26 | Parts . . . . . . . . . . . . . . | 13.5% ad val. |

In addition, General Interpretative Rule 10 is relevant and provides in pertinent part:

10. *General Interpretative Rules.* For the purpose of these schedules—

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

## Customs Court

From its examination of the samples in evidence as exhibits, which the court regarded as "potent witnesses," the court stated the following conclusions: (1) "the alleged housings are finished articles insofar as the state of manufacture is concerned," and lack for completion only "mere *assembly* with various other parts"; (2) all of the omitted parts may be easily incorporated into the importations to complete the reels; and (3) concerning exhibit 1, at least, "all the action that is characteristically associated with the open face spinning reel had been built into that article."

Upon review of the testimony of the two witnesses for the plaintiff-importer and the two government witnesses, all of whom have had experience in the fishing tackle portion of the sporting goods industry, the court further concluded that the importations were considered as "reels" rather than as "parts of reels" by those in the industry.

In order to resolve the competition between the unfinished articles provisions (existing by virtue of General Interpretative Rule 10(h), supra) and the parts provisions of TSUS, the court applied the test in *Authentic Furniture Products, Inc. v. United States*, C.A.D. 1109, 486 F.2d 1062, 61 CCPA 5 (1973). Under that test, as the court viewed it, the absence of a "substantial or essential part" will preclude classification as the unfinished article and require classification under the parts provision. In applying that test, the court stated (81 Cust.Ct. at ——, 460 F.Supp. at 683):

In the court's opinion, the imported merchandise was properly classified as fishing reels within the purview of item 731.-20. It is plain to see that when the exhibit 1 was manipulated manually all the action that is characteristically associated with the open face spinning reel had been built into that article.

Thus, the bail could be cocked. And then it closed upon rotation around the turning flyer. The internal gears moved and rotated the crankshaft in circular motion while at the same time causing the spool shaft to perform its customary reciprocal back and forth motion. This, to the court, constitutes the essence of a spinning reel. This action was imparted to the reel without the addition of the omitted parts. The spool, handle, and drag knob can be used to regulate, retard or refine this action.

The Customs Court rejected the argument that the missing parts were essential because without them the imported merchandise could not be used for fishing. The court said: "The function of a reel of this

kind is to *spin*. And the *spinning action* is achieved by the imported articles in the condition as imported" (emphasis in original).

Also rejected was appellant's attempt to compare the cost of the omitted parts against the cost of the imported articles. The court said that, while cost is a factor, to determine the substantiality of the omitted parts one "must weigh the relationship of the omitted parts against the included parts" and "assess the significance of the omitted parts in the total scheme of things."

## OPINION

We find no error in the decision of the Customs Court. However, we find from a reading of appellant's brief an apparent misunderstanding of the test to be applied.

In *Authentic Furniture Products, Inc. v. United States*, 68 Cust.Ct. 204, C.D. 4362, 343 F.Supp. 1372 (1972), the Customs Court was faced with the issue of deciding the proper classification between competing unfinished-articles and parts provisions of TSUS, which competition arises by virtue of General Interpretative Rule 10(h). In its decision that the imported merchandise, consisting of unassembled pieces of bunk beds (namely posts, headboards, footboards, ladders, and guardrails, without the side rails necessary to form a complete bunk bed), was properly classifiable as parts of furniture rather than as unfinished furniture, the Customs Court examined prior authority and then stated the existing test, "That parts of an article, when assembled, *must result in a substantially complete article*, for their classification as the article itself * * *." (Emphasis ours.) 68 Cust.Ct. at 213, 343 F.Supp. at 1379.

In affirming the Customs Court decision, this court stated that there was "no error in the lower court's holding that parts of an article may be classified as the unfinished article itself only when the imported pieces constitute a substantially complete article * * *." 486 F.2d at 1063, 61 CCPA at 6. Thus, the court approved of the test set forth by the lower court, notwithstanding

the fact that it then said (486 F.2d at 1064, 61 CCPA at 7):

> We consider the application of the test, whereby the absence of a substantial or essential part precludes classification as the unfinished article itself, to be well founded in the case law so ably discussed by the lower court and aptly followed in the present case.

Appellant has seized on the word "essential" and has argued that, since the omitted parts of the reels here at issue are essential to their *use* by the ultimate consumer, classification as unfinished reels is improper. We do not agree.

■ In reading the majority opinion in *Authentic Furniture*, it must be emphasized that the court approved the test applied by the Customs Court and was not attempting to formulate another test or modify the test applied by the Customs Court. However, the language of the majority opinion indicates that a different formulation of the test was in fact adopted. It has since caused some confusion, and, if improperly read, could result in decisions which are at odds with what we perceive to be the intent of Congress as expressed in General Interpretative Headnote 10(h). To the extent that the majority opinion in *Authentic Furniture* may be so read as providing a test other than the test used in that case by the Customs Court, it is expressly overruled for the reasons set forth below.

If, as appellant argues, the omission of a part essential to the use of the *eo nomine* designated article would prevent classification as the article in an unfinished condition, there would be, in practical effect, no such thing as an *unfinished* article, since the omission of virtually any part from an otherwise complete article would prevent its use in the manner intended. *See Authentic Furniture Products*, 486 F.2d at 1064–65, 61 CCPA at 8 (Miller, J., *dissenting*). Such is clearly not the intent of Congress, as evidenced by the very existence of General Interpretative Rule 10(h).

Further, the result in *Authentic Furniture Products* does not merely depend on

the "essential" nature, be it functional or commercial, of the omitted side rails. It is abundantly clear from the opinion of the Customs Court, which was approved by this court, that the basis of the decision in that case was that "it is the determination of this court that the importations do not constitute a substantially complete article." 68 Cust.Ct. at 215, 343 F.Supp. at 1380. Such a determination does not depend merely on the presence or absence of an "essential" part.

 There are several factors which may come into play in the determination of whether an article is substantially complete. In a case, such as this, where the article is incomplete due to the omission of one or more parts, as opposed to where an article is incomplete because the material which comprises the article is in need of further processing, the following factors can be relevant: (1) comparison of the number of omitted parts with the number of included parts; (2) comparison of the time and effort required to complete the article with the time and effort required to place it in its imported condition; (3) comparison of the cost of the included parts with that of the omitted parts; (4) the significance of the omitted parts to the overall functioning of the completed article; and, (5) trade customs, i. e., does the trade recognize the importation as an unfinished article or as merely a part of that article. This list of factors is not exhaustive; it must be recognized that fewer than all of the above factors, or additional factors, may come into play depending on the particular importation. The outcome of each case will always depend on the particular merchandise involved. It would be oversimplification of an essentially difficult juridical problem, often involving a determination of Congressional intent, for us to attempt to provide anything more than guidelines for the trier of fact to follow in assessing a given case.

In the case at bar, we think that the lower court had an adequate basis upon which to decide that the importations are unfinished fishing reels. Since the burden on the importer in a classification case is a dual one, it must be shown that the assigned classification is in error, *and* that the claimed classification is correct. *United States v. A. Johnson & Co.*, C.A.D. 1218, 588 F.2d 297, 66 CCPA —— (1978); *Hayes-Sammons Chemical Co. v. United States*, 55 CCPA 69, C.A.D. 935 (1968). We do not think that either burden has been met. The reasoning used by the Customs Court in deciding that the importations are unfinished fishing reels because they are substantially complete is in harmony with the foregoing guidelines. Its conclusions are supported by the evidence and reflect consideration of factors (1), (2), (4), and (5).

The judgment of the Customs Court dismissing the action is *affirmed.*