**XTC PRODUCTS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 88–06–00451.**

United States Court of
International Trade.

July 12, 1991.

Sandler, Travis & Rosenberg (Beth C. Ring and Barry M. Boren), New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Nancy M. Frieden), Washington, D.C., for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff, XTC Products, Inc., ("XTC") brings this action to challenge the classification by the United States Customs Service ("Customs") of its imported product under item 389.62 of the Tariff Schedules of the United States ("TSUS"), as a textile article not specifically provided for. Plaintiff seeks classification of the product, known as "Hugg–A–Planet," under item 273.30, TSUS, as a printed globe.

## BACKGROUND

Plaintiff was the importer of record of the subject merchandise, which entered the United States from South Korea in 1986. The merchandise as imported is a textile material with a map of the world printed upon it, and constructed so that when it is stuffed with polyurethane, it takes on a spherical shape. Customs classified the Hugg–A–Planet "skins" under a basket provision of the TSUS for miscellaneous textile products. Specifically, Customs classified the articles under section 389.62, TSUS, which reads as follows:

> Articles not specially provided for, of textile materials: Other articles, not ornamented:
>> Of man-made fibers:
>>> Other:
>>> Other:

This section carries a duty of 4¢ per pound plus 10% *ad valorem.* XTC claims that the Hugg–A–Planet should be classified under the *eo nomine* provision for printed globes, found at section 273.30, TSUS.[1] The par-

---

1. Item 273.30, TSUS, reads as follows:      Printed globes ...

ties stipulated that at the time of importation, goods imported from South Korea under this section were eligible for duty-free entry under the Generalized System of Preferences ("GSP"). *See* Pretrial Order at 4. Hence, if plaintiff prevails in this action, its goods may enter duty-free.

The court may review a classification by Customs following the denial of a protest filed pursuant to 19 U.S.C. § 1514 (1988). Plaintiff properly is before the Court following denial of its protest. The Court's jurisdiction is based on 28 U.S.C. § 1581(a).

## DISCUSSION

■ Customs' classification of imported merchandise is presumed to be correct. 28 U.S.C. § 2639(a)(1) (1988). Therefore, the importer challenging the classification bears the burden of showing the error of Customs' decision. *Id.; Brookside Veneers, Ltd. v. United States,* 847 F.2d 786, 787 (Fed.Cir.1988), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). However, once the classification is contested, the court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed. Cir.1984).

The threshold issue for the Court is whether the imported merchandise is a printed globe classifiable under the *eo nomine* provision or a miscellaneous textile product. Generally, an *eo nomine* designation is to "be preferred to terms of general description and to enumerations which are broader in scope and less specific." *U.S. v. Astra Trading Corp.,* 44 CCPA 8, 11, C.A.D. 627 (1956). General Headnote 10(c) of the Rules of Interpretation, TSUS, adds that an "article which is described in two or more provisions of this schedule is classifiable in the provision which most specifically describes it."

## I. *Printed Globe*

■ To determine whether the Hugg–A–Planet fits within the *eo nomine* provision for printed globes, the Court first must define the term "printed globe." The

meaning of a tariff term is a question of law. *Digital Equipment Corp. v. United States,* 889 F.2d 267, 268 (Fed.Cir.1989); *Convertors Div. of Am. Hosp. Supply Corp. v. United States,* 861 F.2d 710, 712 (Fed.Cir.1988). When determining the legal definition of a tariff term, the Court may rely upon the common and commercial meanings of the term as found in judicial authority and lexicographic materials. *Simod Am. Corp. v. United States,* 872 F.2d 1572, 1576 (Fed.Cir.1989). *See also Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92–93, 673 F.2d 380, 382 (1982); *A & A Int'l, Inc. v. United States,* 11 CIT 775, 778, 676 F.Supp. 263, 265 (1987).

■ Webster's Third New International Dictionary at 965 (1986), defines a globe as:

a round *typically* hollow and metal ball that has a map of the earth drawn on it and that is *usually* set so as to be rotatable at an angle corresponding to the inclination of the earth's axis.

(Emphasis added.) The Second College Edition of the American Heritage Dictionary at 562 (1982), defines a globe as a "body with the shape of a sphere, *especially* a representation of the earth or heavens in the form of a hollow ball." (Emphasis added.) The Oxford English Dictionary, Second Edition, Volume VI, at 582 (1989), defines a globe as a "spherical structure on whose surface is depicted the geographical configuration of the earth (*terrestrial globe*), or the arrangement of the constellations (*celestial globe*)." These definitions, while providing a helpful guideline, pointedly are not exclusive of globes that are not hollow, metal or rotatable at an angle in conformity with the earth's axis.

Upon review of lexicographic and other sources, the Court finds that a proper legal definition of a globe is: A sphere with a reasonably accurate map of the earth printed upon it. Many variations of the typical globe exist, particularly in terms of component materials since globes may be made of metal, glass, plastic or, as in this case, a textile fabric. However, this general definition suffices for the Court's purposes.

■ The Hugg–A–Planet, as sold, is a sphere composed of a textile material of cotton and polyester, and stuffed with polyurethane. Printed upon the textile "skin" is a reasonably accurate map of the world. It appears to be printed to scale and it delineates continents, countries and major bodies of water.

■ At trial, plaintiff presented four witnesses who testified that the Hugg–A–Planet is used as a globe, that is, it is used to inform and educate people as to the geography of the earth. The government produced no witnesses in rebuttal. The use to which a product is put is relevant because the primary function of an item governs its classification. *A & A Int'l,* 11 CIT at 785, 676 F.Supp. at 270.

Plaintiff's first witness was Linda Lantieri, the director of the Resolving Conflict Creatively Program of the Division of Professional Development for the New York City public schools. Ms. Lantieri testified that the Hugg–A–Planet is used as an educational tool in the New York City public school system. She also stated that she worked with the product in educational programs in Alaska, Arkansas and Louisiana, and that the product was used to teach children about geography. Ms. Lantieri added that the printing on the Hugg–A–Planet is not incidental to its use because if a map of the world were not printed on it, she would not have purchased it for use in the school system. The second witness, Maria Stanof Haritopoulos, the store manager for Rand McNally in New York City, testified that the product is sold and marketed as a globe in the globe department of her store.

Robert Forenza, the president of XTC, testified as to the process for manufacturing the Hugg–A–Planet. He stated that there are over six hundred identifiable features on the globe and each is depicted accurately and to scale. Finally, Patricia Howard, the vice president for marketing of XTC, testified that the printing and geographical configurations are updated with each reprinting to add detail and account for geo-political changes.

The government has gone to great lengths in attempting to prove that the Hugg–A–Planet is not a globe because it is used by some purchasers and is advertised by some retailers, as a toy, pillow or ornament. Defendant cites to Headnote 1 of Schedule 2, Part 5 of the TSUS, under which is the printed globe classification. That headnote states that this part covers only printed matter, and "does not cover any article in which printing is merely incidental to the primary use of the article or in which printing is employed mainly for coloration or to produce a decorative or novelty effect." However, the fact that a globe is used as a toy, pillow or ornament does not change its essential character if it fits the definition of a globe. The functions of any globe are manifold. For instance, a globe with gold trim and interior illumination is still a globe, even though it is likely to be used for decorative purposes. Similarly, the fact that the Hugg–A–Planet is soft and squeezable does not change its fundamental character. Plaintiff's witnesses demonstrated that the printing on the Hugg–A–Planet is not incidental to its use as a globe. If not for the printing of a map of the world, it could not be used by the educational program directed by Ms. Lantieri, or sold in the globe department of the store managed by Ms. Haritopoulos. Therefore, the printing imparts the essential character of the product and Headnote 1 does not preclude classification of the Hugg–A–Planet under item 273.30, TSUS. *See Dominion Ventures, Inc. v. United States,* 10 CIT 411, 413, 1986 WL 30007 (1986).

Upon review of the testimony of plaintiff's witnesses, and of the product itself, the Court finds that the Hugg–A–Planet is a printed globe. It is spherical and has a reasonably accurate map of the world printed upon it. In addition, it is primarily used as an instrument of geographical information. Hence, it fits within the legal definition of a globe.

## II. *Condition as Imported*

■ However, the Hugg–A–Planet is not imported in spherical form. The imported merchandise is the hollow and folded

"skin" of the finished product. While the map of the earth is imprinted thereon and the "skin" is sewn in such a manner that when stuffed it acquires a globular shape, it is not spherical, or stuffed, when imported. Therefore, the government contends, the merchandise as imported cannot be classified as a printed globe. Plaintiff counters that, in its condition as imported, the product is an unfinished globe, eligible to enter under the classification for the finished product.

It is well established that an imported article is to be classified according to its condition as imported, not its condition as sold. *Simod*, 872 F.2d at 1577; *Carrington Co. v. United States*, 61 CCPA 77, 81, C.A.D. 1126, 497 F.2d 902, 905 (1974); *United States v. Baker Perkins, Inc.*, 46 CCPA 128, 131, C.A.D. 714 (1959). The Court having determined that the finished product is a globe, the issue then becomes whether the Hugg–A–Planet skins constitute unfinished globes or parts of globes.

If they are parts of globes, they cannot enter under the *eo nomine* provision because "a tariff provision which does not specifically provide for parts does not include them," and item 273.30 does not provide for parts. *Glass Prods., Inc. v. United States*, 10 CIT 253, 255, 641 F.Supp. 813, 814 (1986); *see also United States v. Bruckmann*, 65 CCPA 90, 94, C.A.D. 1211, 582 F.2d 622, 625 (1978). But if the merchandise as imported is an unfinished, or substantially complete globe, then it may enter under the *eo nomine* provision, since parts of an article which, when assembled, "result in a substantially complete article" may be classified as the finished article. *Authentic Furniture Prods., Inc. v. United States*, 68 Cust.Ct. 204, 213, C.D. 4362, 343 F.Supp. 1372, 1379 (1972), *aff'd*, 61 CCPA 5, C.A.D. 1109, 486 F.2d 1062 (1973); *Daisy–Heddon, Div. Victor Comptometer Corp. v. United States*, 66 CCPA 97, 101, C.A.D. 1228, 600 F.2d 799, 802 (1979).

Our appellate court enumerated several factors to be considered by the courts when determining whether an imported article is substantially complete. *Daisy–Heddon*, 66 CCPA at 102, 600 F.2d at 803. Those factors are:

(1) comparison of the number of omitted parts with the number of included parts; (2) comparison of the time and effort required to complete the article with the time and effort required to place it in its imported condition; (3) comparison of the cost of the included parts with that of the omitted parts; (4) the significance of the omitted parts to the overall functioning of the completed article; and (5) trade customs, *i.e.*, does the trade recognize the importation as an unfinished article or as merely a part of that article.

In selecting these factors, the court stressed that the list is not exhaustive and "fewer than all of the above factors, or additional factors, may come into play depending on the particular importation." *Id.*

Defendant contends that the imported skins are not substantially complete because they lack "the stuffing and additional processing required to transform the fabric skins into the shape necessary to make it identifiable as a globe." *Post-Trial Brief of Defendant, the United States* at 13. In support of this contention, the government cites to *Jack Schaefer, Inc. v. United States*, 11 Cust.Ct. 78, C.D. 798 (1943), wherein our predecessor court found that imported football casings could not be classified as footballs since they lacked the inner bladder. The court found that neither the casing nor the bladder, by itself, constituted an unfinished football because both were necessary to create a football. 11 Cust.Ct. at 79–80. Therefore, the casings were classified as manufactures of leather.

The Court finds that the reasoning in *Jack Schaefer* cannot be applied to the case at bar since it has been repudiated by the appellate court's doctrine of substantial completeness. In *Daisy–Heddon*, the Court of Customs and Patent Appeals specifically rejected the notion that the determination that a product is substantially complete must turn "on the presence or absence of an 'essential' part." 66 CCPA at 102, 600 F.2d at 803. The court explained that an analysis of substantial com-

pleteness must encompass several factors, not just whether an essential component of the finished product is present or not. *Id.*

A case in point was *Channel Master, Div. of Avnet, Inc. v. United States,* 856 F.2d 177 (Fed.Cir.1988), wherein our appellate court considered the classification of imported solid state scanners which, upon the insertion of one or more crystals, received radio frequencies. The importer argued that, without the crystals the scanners could not operate as radios, thus they could not be classified as radio receivers. The court disagreed, asserting that the absence of an essential item was not sufficient to avoid classification as the finished article, provided the imported product constituted a substantially complete article. 856 F.2d at 179. Since the scanners did comprise substantially complete radio receivers, the court held that even without the essential crystals, the imported articles were classifiable as radio receivers.

Applying the *Daisy–Heddon* factors to the case at bar, the Court finds that as to the first factor, a comparison of the number of omitted parts with the number of included parts, there is no difference. One part is included (the skin) and one part is omitted (the stuffing).

The second factor is how the time and effort required to complete the article compares with the time and effort expended to place it in its imported condition. The testimony of Mr. Forenza and Ms. Howard, and an examination of the evidence, clearly indicate that a great deal of time and effort is spent creating the globe skins. The cloth first is "screenprinted" with the multi-colored map configurations, and then modified, if necessary, to correct inaccuracies or to reflect geo-political changes. The fabric then is cut to a unique "orange-peel" shape and sewn in such a way that when later stuffed it assumes a spherical shape. After importation, the product is stuffed through a small hole near the bottom of the globe which is then sewn closed. Since a great deal more time and effort is spent to place the product in its imported condition than is spent after importation, this factor indicates that the Hugg–A–Planet,

as imported, is a substantially complete printed globe.

The third factor is the cost of the processes prior to importation versus the cost of post-importation operations. Plaintiff submitted no information on relative costs based on a mistaken belief that this factor is irrelevant because "the nature of the stuffing does not change the essential character of the article as a globe." *Post Trial Brief of XTC Products, Inc.* at 21. Whether or not the *nature* of the stuffing is critical does not have bearing on the issue of relative costs. The fact is the Hugg–A–Planet is stuffed with polyurethane, which costs something. Although it seems the post-importation costs likely are less than the costs necessary to create the skins, the Court cannot consider this factor since no evidence was submitted.

The fourth factor is the significance of the omitted parts to the overall functioning of the completed article. Plaintiff argues that this factor also is irrelevant because regardless of what the product is stuffed with, the Hugg–A–Planet is a globe. Plaintiff is half-right, in that the *type* of stuffing is irrelevant, but the fact is it must be stuffed with *something* in order to be a globe. Given that the printing of the map of the earth imparts the essential character of the product, the Court finds that the omitted part is less significant than the included part of the Hugg–A–Planet. As a result, this factor also weighs in plaintiff's favor.

The last factor is trade customs, that is, whether the trade considers the importation to be an unfinished article or a part of the article. Aside from the testimony of XTC's own president and vice president for marketing, there was no evidence of what the commercial attitude is about the imported Hugg–A–Planet. Hence, this factor may not be regarded as being in plaintiff's favor.

Upon review of the *Daisy–Heddon* factors as applied to the facts of this case, the Court finds that the Hugg–A–Planet skins constitute substantially complete globes since the time and effort expended to create the skins greatly exceeds that of

the processing performed after importation. While the stuffing is necessary to give the Hugg–A–Planet a globular shape, the Court finds that the stuffing is a relatively trivial operation compared to the processing which takes place in South Korea. Thus the Court finds that these factors outweigh the fact that no evidence was submitted to show relative costs or trade customs, and the imported merchandise should be classified as a printed globe under item 273.30, TSUS.

Furthermore, an independent review of the government's classification of the Hugg–A–Planet as a miscellaneous textile article demonstrates that it cannot stand because the product is clearly more than just a textile article. Merchandise which constitutes "more than a particular article or which has additional nonsubordinate or coequal functions is not classifiable as that article." *Digital Equipment*, 889 F.2d at 268; *see also A & A Int'l*, 11 CIT at 784, 676 F.Supp. at 269. The subject merchandise unquestionably is "more than" a textile material, in that it has specific educational and informative uses which are exclusive to a printed globe and not subordinate to its function as a textile article.

## CONCLUSION

Accordingly, the Court holds that the government's classification fails both independently and in comparison to the importer's alternative. The Court having found that plaintiff has overcome the presumption of correctness which attached to Customs' classification, judgment shall be entered in favor of plaintiff and Customs is ordered to reclassify the subject merchandise as a printed globe under item 273.30, TSUS.