CASIO, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 89–07–00385

(Decided October 7, 1994)

*Grunfeld Desiderio, Lebowitz & Silverman (Steven P. Florsheim, David L. Simon)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Susan Burnett Mansfield)* for defendant.

### OPINION

MUSGRAVE, *Judge:* Plaintiff challenges the United States Customs Service ("Customs") classification of certain models of imported keyboard synthesizers pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988). The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

The subject merchandise consisting of certain models of keyboard synthesizers was entered during the years 1987 and 1988, through the ports of Los Angeles, New York, Chicago, and Dallas/Ft. Worth, in some thirty entries.[1] Customs classified all these articles under item 725.47, TSUS, as "Electronic musical instruments * * * Other," dutiable at the rate of 6.8% *ad valorem*. Plaintiff claims that certain functions and features in the majority of the subject articles, over and above their musical instrument function, render them more than musical instruments.[2] Furthermore, plaintiff asserts that some of the articles do not have speakers and audio amplifiers which renders them incapable of producing audible sound.[3] Consequently, plaintiff argues that the imported articles are not musical instruments, thus, not classifiable under item 725.47, TSUS.

Plaintiff argues that the subject articles should be classified under item 688.34, TSUS. This classification provides for: "Electrical articles and electrical parts of articles, not specifically provided for: Electrical articles using pre-programmed digital integrated circuits to produce sound," dutiable at the rate of 3.9% *ad valorem*. Alternatively, plaintiff argues that item 688.42, TSUS, is applicable. This provision covers "Electrical articles and electrical parts of articles not specially provided for: * * * Other: * * * Other." The duty rate for this provision is also 3.9% *ad valorem*.

## STANDARD OF REVIEW

Customs' classification decision is presumed to be correct and the party challenging the decision has the burden of overcoming this statutory presumption. 28 U.S.C. § 2639(a)(1) (1988). To determine whether an importer has overcome the statutory presumption, the Court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed. Cir. 1984).

## STATEMENT OF FACTS

Each of the subject articles (with the exception of the guitar-based and saxophone-based models and the VZ–10M) consists of a keyboard-driven synthesizer. Each article includes one or more of the following features:

> **ROM pack**—computer chip driven device containing ROM ("ready-only memory") which is pre-programmed to play a melody on the keyboard.

---

[1] The Casio model numbers at issue in this case are as follows: CDP–3300, CPS–101, CPS–300, CT–360, GF–370, CT–450, CT–460, CT–S 10, CT–607, CT–630, CT–640, DH–100, DH–200, EP–10, EP–20, EP–30, HT–3000, HT–6000, HZ–600, MG–S 10, MT–140, MT–205, MT–240, MT–520, MT–540, MT–600, MT–640, PG–380, PMP–300, PMP–400, PMP–500, PT–10, PT–180, PT–87, SK–1, SK–10, SK–S, SK–8, VZ–1, VZ–10M.

[2] See *"Statement of Facts"* in this opinion for a detailed discussion of the functions and features at issue.

[3] The following Casio models do not contain speakers and audio amplifiers: HZ–600, MG–510, PG–380, VZ–1, and V–10M.

**Sampling**—is the ability to capture a sound (by digital recording) and play it back when triggered. The hardware required is a microphone and circuitry to digitize the sound and store it for subsequent recall.

**Sequencer**—a recording device that "remembers" sequences of key depressions and digital events. In other words, its memory consists of the succession of keys which the player depresses on the keyboard, together with the timing of the keystrokes. The recorded sequence—from a phrase to an entire composition, depending on the sequencing capabilities—can then be played back and manipulated. The sequencer also permits the overlay of additional sounds produced by other musical devices, so that multiple "tracks" can be overlaid atop one another.

**Auto-rhythm**—generates a rhythm selected from a number of pre-programmed rhythms *(e.g.,* samba, disco, march).

**Auto accompaniment**—generates an accompaniment of "fill-in" notes automatically for the keys depressed by the user on the right side of the keyboard.

**Mixer**—device that permits the adjustment of relative volumes of sounds produced by various electronic musical devices.

DISCUSSION

Plaintiff asserts that 725.47, TSUS, is an *eo nomine* tariff provision.[4] Therefore, plaintiff contends that if the articles at issue are *"more than"* musical instruments, they are not classifiable under that tariff provision. *Pretrial Brief On Behalf Of Casio, Inc. ("Casio Pretrial Brief"),* at 8.

Plaintiff cites to *Robert Bosch Corp. v. United States,* 63 Cust. Ct. 96, 103–4, C.D. 3881 (1969) which defines the *"more than"* principle as follows:

> [W]here an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute.

*Casio Pretrial Brief,* at 9.

Plaintiff argues that the articles in question are not merely musical instruments within the design of item 725.47, TSUS. Rather, the presence of additional, non-musical instrument features listed above in the *"Statement of Facts"* renders them more than musical instruments, and therefore takes them outside the ambit of item 725.47, TSUS. *Casio Pretrial Brief,* at 10. Moreover, plaintiff argues that these additional features are not of incidental or minor significance—these additional features give the articles their essential character as home entertainment devices. Plaintiff argues that the non-musical instrument features of the subject articles, combined with their musical instrument func-

---

[4] An *"eo nomine"* designation is one which describes commodity by a specific name, usually one well known to commerce. Ordinarily, use is not a criteria in determining whether merchandise is embraced within *eo nomine* provision, but use may be considered in determining identity of *eo nomine* designation. Black's Law Dictionary 535 (6th ed. 1990).

tion, renders them what is commonly referred to as "music systems" or "music workstations." *Id.* at 10–11.

In addition, plaintiff claims that these articles are not generally marketed as musical instruments. Plaintiff asserts that the subject articles are not sold to or through musical instrument stores. Rather, they are marketed predominantly through the electronics departments of general-merchandise retailers and electronics specialty retailers. *Id.* at 13. Plaintiffs cite to *Davis Products, Inc. v. United States,* 59 Cust. Ct. 226, C.D. 3127 (1967) as being instructive. In that case, the Court stated:

> In selling these articles to department stores across the nation, the witness Friedlander always dealt with the Christmas decoration buyer, not the toy buyer. Although a merchandise medium may not *always* be a proper means of determining classification * * * sometimes, conversely, where merchandise is sold in stores having separate and distinct departments, a showing that certain articles are marketed through one department instead of another can have obvious probative value * * *.

59 Cust. Ct. at 230 (emphasis in original).

Plaintiff also argues that label descriptions and advertising phraseology do not dictate tariff classification. Plaintiff argues that its use of the term "Electronic Musical Instruments" as an advertising artifice to entice the general public into purchasing the subject articles does not refute the fact that these articles are more than musical instruments for tariff purposes. *Casio Pretrial Brief,* at 16; *see United States v. Strauss Bros. & Co.,* 6 Ct. Cust. App. 498, T.D. 36125, 30 Treas. Dec. 165, *aff'ing,* Abs. 37902 (1916); *Border Brokerage Co. Inc. v. United States,* 64 Cust. Ct. 331, C.D. 3999 (1970).

Lastly, plaintiff claims that five of the articles do not possess audio amplifiers or loudspeakers. While they are capable of producing an electrical signal which could be fed into separately attached audio amplifiers and speakers and thus heard, plaintiff asserts that in their imported condition, these articles are incapable of producing audible sound. Plaintiff argues that according to applicable case law, an article is not classifiable as a musical instrument under item 725.47, TSUS, if it does not produce sound without the attachment of additional devices. Therefore, these five articles are not classifiable under item 725.47, TSUS. *See Montgomery Ward & Co. v. United States,* 61 CCPA 101, C.A.D. 1131, 499 F.2d 1283 (1974); *Universal Accordion Factory v. United States,* 73 Cust. Ct. 208, C.D. 4577 (1947); *Casio Pretrial Brief,* at 16–17.

Defendant argues that when an article is described in two or more tariff provisions, it should be classified under the provision which describes it most specifically. *Defendant's Pretrial Brief,* at 32; *see S.I. Stud, Inc. v. United States,* 17 CIT 661, Slip Op. 93–124 at 17 (July 1, 1993); *A.N. Deringer Inc. v. United States,* 10 CIT 577, 580 (1986). Assuming, *arguendo,* that the subject articles are classifiable under both the provision it was classified by Customs and by one of the provisions claimed by plaintiff,

defendant argues that its classification must prevail. *Defendant's Pretrial Brief,* at 2.

Defendant further argues that the meaning of an *eo nomine* provision is determined as of the date of enactment, but that meaning embraces all subsequently created articles that fall within it. The defendant cites to *Davies Turner & Co. v. United States,* 45 CCPA 39, 41–42, C.A.D. 669 (1957) in which the Court states:

> The meaning of *eo nomine* provisions is to be determined as of the date of enactment but, when so determined, that meaning will embrace all subsequently created articles which fall within it. Tariff acts, therefore, are made for the future in the sense that they embrace articles not in existence at the time of enactment, but the meaning of words used in such acts is fixed at the time of enactment and does not fluctuate as the meaning of words might subsequently vary.

Defendant contends that new and improved articles will be classified under the provision for such articles as long as the new articles possess an essential resemblance to the ones named in the statute. *See Smillie & Co. v. United States,* 12 Ct. Cust. App. 365, 367, T.D. 49,520 (1924); *Clairol, Inc v. United States,* 7 CIT 377 (1984); *Defendant's Pretrial Brief,* at 5–6. In other words, where an article has been improved or amplified, but the essential characteristics are preserved or only incidentally altered, then the article is not excluded from an unlimited *eo nomine* statutory designation. *See United Carr Fastener Corporation v. United States,* 54 CCPA 89, C.A.D. 913 (1967); *Defendant's Pretrial Brief,* at 7–8.

Defendant argues that in this case, the features plaintiff claims make the subject articles more than musical instruments are generally improvements that do not change the general character of the merchandise from musical instruments. Moreover, defendant argues that any feature which is not an improvement to the merchandise and does not change its essential character is only incidental. *Defendant's Pretrial Brief,* at 9.

Defendant admits that the courts in *Montgomery Ward & Co. and Universal Accordian Factory, supra,* determined that the capacity to produce electronic sound is the *sine qua non*[5] of classification as an electronic musical instrument. However, defendant argues that the case law cited by plaintiff has been clarified in a more recent decision in *Daisy-Heddon, Div. Victor Comptometer Corp. v. United States,* 66 CCPA 97, C.A.D. 1228, 600 F.2d 799 (1979). *Post-Trial Brief for United States, Defendant ("Defendant's Post-Trial Brief"),* at 57–63. In *Daisy-Heddon,* the court resolved and clarified the competing tariff provisions for unfinished articles and the various TSUS items pertaining to parts by holding that a substantially complete article is classifiable as an

---

[5] Without which not. That without which the thing cannot be. An indispensable requisite or condition. Black's Law Dictionary 535 (6th ed. 1990).

unfinished article despite the omission of an essential part. The court reasoned:

> If, as appellant argues, the omission of a part essential to the use of the *eo nomine* designated article would prevent classification as the article in an unfinished condition, there would be, in practical effect, no such thing as an *unfinished* article, since the omission of virtually any part from an otherwise complete article would prevent its use in the manner intended. See *Authentic Furniture Products,* 61 CCPA at 8, 486 F.2d at 1064–65 (Miller, J., *dissenting).* Such is clearly not the intent of Congress, as evidenced by the very existence of General Interpretive Rule 10(h).

66 CCPA at 102, 600 F.2d at 802 (emphasis in original).

The guidelines enumerated in *Daisy-Heddon* are as follows:

> [T]he following factors can be relevant: (1) comparison of the number of omitted parts with the number of included parts; (2) comparison of the time and effort required to complete the article with the time and effort required to place it in its imported condition; (3) comparison of the cost of the included parts with that of the omitted parts; (4) the significance of the omitted parts to the overall function of the completed article; and (5) trade customs, i.e., does the trade recognize the importation as an unfinished article or as merely a part of that article. This list of factors is not exhaustive; it must be recognized that fewer than all of the above factors, or additional facts, may come into play depending on the particular importation.

66 CCPA at 102, 600 F.2d at 803. Defendant argues that applying the *Daisy-Heddon* factors to the case at hand leads to the conclusion that the subject articles are musical instruments within the meaning of item 725.47, TSUS. *Defendant's Post-Trial Brief,* at 57–63.

The "more than" test is one of the basic tests for determining whether an item is within an *eo nomine* classification item. This test is set forth in a number of cases including, *Servo-Tek Products Co. v. United States,* 57 CCPA 13,15, C.A.D. 969, 416 F.2d 1398, 1399 (1969). The ultimate issue in this case is whether the items "possess features substantially in excess of those within the common meaning of the *[eo nomine]* term." *United Carr Fastener Corp. v. United States,* 54 CCPA at 91, *supra.*

Plaintiff relies on two expert witnesses (Dr. Howard Cass[6] and Dr. Robert Moog[7]) who argue that the subject articles are not musical instruments. Essentially, Dr. Moog's position is that "the essence of all musical instruments, acoustical or electronic, is that the musician has 'real time' control of the instrument he is using to produce music." In other words, the music must be "generated as a result of the contemporaneous transference of the information from the musician's mind to

---

[6] Dr. Howard Cass is a professor of Electronic Music at the Julliard School. His music career spans 17 years, 12 years of which has been devoted to electronic music and the instruments and devices used therefor.

[7] Dr. Robert Moog is the President of Big Briar, Inc., a company that designs and builds touch sensitive keyboards, and other touch sensitive musical devices that incorporate novel control means. He is credited with being the inventor of the first commercially successful electronic keyboard. He has written and spoken on subjects relating to electronic music technology. In addition, he has consulted for electronic musical instrument manufacturers around the world.

the effector mechanism." *Pretrial Testimony of Dr. Moog,* page 2. Dr. Moog stated that the subject articles contain numerous non-musical instrument features and functions which are co-equal to, or exceed, the importance of their musical instrument capability. *Id.* at page 4. Dr. Moog concluded that each of the articles at issue "is an electrical article which uses preprogrammed digital integrated circuits to produce sound." *Id.*

Dr. Cass' position is that the subject articles are not musical instruments because they incorporate features and functions of separate electronic music devices which are not musical instruments. *Pretrial Testimony of Dr. Cass,* page 7. Dr. Cass testified that "the core instrument is what constitutes, in this case, actually a musical instrument." *Transcript of Court Testimony of Dr. Cass,* page 81. Dr. Cass defines the "core instruments" to be a keyboard, tone generator and added amplification and speakers. *Id.*

The Court has difficulty with the myopic premise seemingly espoused by plaintiff's expert witness Dr. Moog that the essence of all musical instruments is that the musician have "real time" control of the instrument. While the Court does not discredit Dr. Moog's testimony, his testimony is contrary to legislative intent. As noted by defendant, music boxes are obviously articles that do not involve "real time" control in the sense meant by Dr. Moog, yet, they came to be specifically provided for in the Tariff Schedules of the United States as *musical instruments* under item 725.50, TSUS. *See United States v. Borgfedt & Co.,* 13 Ct. Cust. App. 620, 622, T.D. 41461 (1926).

Furthermore, the Court finds Dr. Cass' position to be somewhat problematic. His opinion that an article is not a musical instrument if it incorporates features and functions of separate electronic music devices which are not musical instruments is illogical. As stated above, Dr Cass defines the "core instrument" to be a keyboard, tone generator, and added amplification and speakers. Given Dr. Cass' view that an article is not a musical instrument if it incorporates features and functions of separate electronic music devices which are not musical instruments, it follows logically then that even the "core instrument" as defined by Dr. Cass is not a musical instrument.

The Court finds Dr. Moog's and Dr. Cass' testimony to shed little light on the issue, and provide inadequate support for plaintiff's classification argument. The Court after careful review of the record, testimony, and exhibits is of the opinion that the subject articles excluding models VZ–1, VZ–10M, HZ–600, MG–S 10, and PG–380 constitute musical instruments within the meaning of 725.47, TSUS, dutiable at the rate of 6.8% *ad valorem.*

The primary design and function of the features at issue appear to become part of and enhance the musical instruments in which they are found. The features that are part of the subject articles make playing the instruments easier. In addition, the features expand the sounds

available to be played and permit manipulation of sound to enhance creativity.

The stipulations of the parties further support the classification as musical instruments under item 725.47, TSUS. The merchandise was the responsibility of plaintiff's electronic musical instrument division and the professional musical products divisions. The plaintiff used the terminology "Electronic Musical Instruments" to describe many of the subject articles in its advertising literature and on the boxes containing the merchandise. Furthermore, the invoices of the subject articles denoted them as musical instruments. While the plaintiff has shown that the majority of the subject articles are generally sold in other than musical instrument channels of trade, this provides little support in determining whether the subject articles are not musical instruments. While not determinative, such facts do have "obvious probative value." *See Montgomery Ward & Co. v. United States,* 62 Cust. Ct. 718, 724, C.F. 3853 (1969. The fact that the subject articles are referred to by plaintiff itself as musical instruments further supports the classification of the articles as musical instruments. *See Schott Optical Glass, Inc. v. United States,* 11 CIT 899, 910–11, 678 F. Supp. 882, 892 (1987), *aff'd* 862 F.2d 866 (Fed. Cir. 1988).

Defendant has additionally directed the Court to the *Standard Industrial Classification Manual* (1987), which, has been relied upon as some indication of legislative intent since it was used by the Tariff Commission as a reference in preparing the tariff schedules. Of significance, is that the *Standard Industrial Classification Manual,* at pages 256–57, recognize new music synthesizers *as musical instruments.* In light of the foregoing legislative intent, the Court finds the electronic synthesizers at issue to be instruments that reflect current technological developments. In other words, the electronic synthesizers at issue are the result of the evolution of musical instruments.

Rejecting plaintiffs classification of the subject articles as "more than" musical instruments under item 688.34, TSUS, the Court also rejects plaintiffs alternative claim that the subject articles are properly classified under item 688.42, TSUS. The Court having classified the subject articles as musical instruments, item 688.42, TSUS, is not applicable.

With respect to plaintiffs argument that models VZ–1, VZ–10M, HZ–600, MG–510, and PG–380 are not musical instruments because they cannot produce audible sound, the Court finds plaintiffs argument persuasive. Although these items are capable of producing an electrical signal which could be fed into separately attached audio amplifiers and speakers and be heard, in their imported condition they do not possess audio amplifiers or loudspeakers.[8] This issue was resolved in *Montgomery Ward & Co. v. United States,* 61 CCPA 101, CAD. 1131, 499 F.2d 1283 (1974) *("Montgomery Ward")* in which the Court determined that an

---

[8] Model VZ–10M is a tone generator and cannot make sound without a controller as well as an amplifier.

electronic organ, complete except for a loudspeaker and a coordinated cabinet, was not classifiable under item 725.47, TSUS. The Court stated in pertinent part:

> We therefore have to disagree with the lower court's conclusion that the courtroom demonstration "effectively dramatized" how the imported components, when assembled, "generated sound electrically." They generated nothing more than electrical currents and there was no sound but for the added loudspeaker, which was not among the imported articles. We deem it essential to its classification as a "musical instrument"—in the absence of some indication of legislative intent to the contrary—that there be a capability in an organ of producing sound when played upon.

61 CCPA at 107.

Similarly the Court obtained the same result in *Universal Accordion Factory v. United States, supra,* which involved a combination acoustical and electronic accordian, imported without an amplifier. The Court stated in relevant part:

> [A] capacity to produce the electronic sound at the time of importation is the *sine qua non* for classification of a musical instrument under item 725.47.

73 Cust. Ct. at 213 (emphasis in original).

Defendants have misapplied the principles enumerated in *Daisy-Heddon, Div. Victor Comptometer Corp. v. United States, supra.* The issue in this case does not involve competition between unfinished articles and parts. Plaintiff has made no claim that these five models are "unfinished" articles, or that these articles are properly classifiable as parts. The articles as imported are complete articles of commerce and are sold to the public in their imported condition. It is the responsibility of the consumer to attach the appropriate controller, and/or amplifier and speaker. The issue is whether an article which does not produce sound can be classified as a musical instrument. As stated above, the five models at issue generate nothing more than electrical currents and there is no sound but for the added loudspeaker, which is not among the imported articles. To this date, the appellate court's ruling in *Montgomery Ward, supra,* has not been overruled. Therefore, the Court deems it essential to their classification as "musical instruments" in the absence of case law to the contrary that there be a capability in these articles of producing sound when played upon. Accordingly, since these articles are incapable of producing sound they are not classifiable as electronic musical instruments under item 725.47, TSUS.

The record does establish that these models contain at least one "ROM chip." As defined in the *"Statement of Facts,"* a "ROM chip" is a integrated circuit. The "ROM chip" is a permanent storage device containing imbedded digital data and instructions which pertains to the production of sound by each article. Accordingly, the Court holds that models VZ–1, VZ–10M, HZ–600, MG–S 10, and PG–380 are properly classifiable under item 688.34, TSUS, as electrical articles using pre-

programmed digital integrated circuits to produce sound, dutiable at the rate of 3.9% *ad valorem*.

CONCLUSION

For the reasons discussed above, the Court finds Customs' classification of the subject articles excluding models VZ–1, VZ–10M, HZ–600, MG–S 10, and PG–380 under item 725.47, TSUS, is correct. With respect to models VZ–1, VZ–10M, HZ–600, MG–510, and PG–380, the Court holds that plaintiff has overcome the presumption that Customs' classification is correct, and that these articles are properly classifiable under item 688.34 and not under item 725.47, TSUS. Customs is hereby ordered to reliquidate models VZ–1, VZ–10M, HZ–600, MG–510, and PG–380 under item 688.34, TSUS, and to refund all excess duties with interest as provided by law.